# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2024

Lyle W. Cayce
Clerk

————————

No. 23-20361

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Laqwentis Lakeith Adams,

*Defendant—Appellant*.

————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-240-1

————————————————

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Per Curiam:[*]

The district court in this case found that Defendant-Appellant Laqwentis Lakeith Adams committed five violations of supervised release and sentenced him to an eight-month imprisonment term, followed by fifty-two months of supervised release. On appeal, Adams claims the district court erred by (1) not providing him an opportunity to speak during the revocation hearing, and (2) imposing a more burdensome condition in its written

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

judgment than the court orally pronounced at the hearing. For the following reasons, we VACATE Adams's sentence including the challenged condition, and we REMAND for resentencing. On remand, the district court should provide Adams with an opportunity to allocute before imposing a new sentence and should conform its written judgment with its oral pronouncement, consistent with this opinion.[1]

## I.    Factual and Procedural Background

Adams was convicted of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Adams to 140 months in prison, which was later reduced to 120 months, and five years of supervised release. He began serving his term of supervised release in September 2019.

Between March 2021 and June 2023, Adams's probation officer[2] filed three reports stating Adams had violated the conditions of his supervised release in a variety of ways. The June 2023 report stated Adams had tested positive for and admitted to using cocaine and had failed to follow instructions to show proof of employment. The probation officer recommended no action in response so that Adams could continue to participate in outpatient drug treatment. However, the district court ordered issuance of a summons. The probation officer submitted a petition for summons, which alleged five violations: (1) possession and use of cocaine in May 2023, (2) possession and use of marijuana in March 2022, (3) failure to

_____

[1] On appeal, Adams challenges only his sentence and the condition of his supervised release requiring him "not [to] use or possess alcohol," so our decision is limited to those issues and does not affect any other portions of the district court's judgment.

[2] Adams had at least three different probation officers while on supervised release.

follow instructions to show proof of employment, (4) failure to provide requested financial information, and (5) failure to work regularly at a lawful occupation.

At a final revocation hearing, Adams pleaded true to the first two violations and not true to the others. The district court heard testimony from the probation officer and two defense witnesses. Defense counsel also proffered testimony from an additional witness and submitted documentary evidence. Both parties recommended termination of supervised release. The government recommended a three-month prison term. Defense counsel did not oppose that recommendation insofar as the court found that "there need[ed] to be a sanction for the positive drug screens." Adams was never offered the opportunity to speak on his own behalf at the hearing.

The district court found that all of the alleged violations were true. Because all of the violations were Grade C, the district court stated that the recommended sentencing range was five to eleven months. The district court revoked supervised release and imposed an eight-month prison sentence followed by fifty-two months of supervised release. During the hearing, the district court stated: "[t]he conditions of supervision under the recommenced term of supervised release will be the same conditions as those that were directed in the original judgment." Defense counsel did not object to any supervisory conditions related to alcohol or to the fact that Adams was not given the opportunity to speak on his own behalf. Adams timely appealed.

## II.    Jurisdiction

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Although Adams has been released from prison since filing this appeal, he is still serving supervised release, so we

continue to have jurisdiction. *See United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) (per curiam).

## III.    Discussion

### A. Allocution

Adams first argues that the district court erred by denying him his right to speak at his revocation hearing (also called "allocution"). *See* Fed. R. Crim. P. 32(i)(4)(A)(ii), 32.1(b)(2)(E). As Adams concedes, he failed to preserve this issue by objecting at the hearing, so we review for plain error. *See United States v. Chavez-Perez*, 844 F.3d 540, 543 (5th Cir. 2016).

Plain-error review has four prongs: (1) "[the] defendant must establish that an error was committed," (2) "the defendant must show that the error is clear or obvious," (3) "the defendant must show that the error affected his substantial rights," and (4) "the court must determine whether it should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Jackson*, 7 F.4th 261, 263 (5th Cir. 2021) (per curiam) (alteration adopted) (internal quotation marks and citation omitted). Both parties agree that Adams has established the first three prongs, and we agree as well. Thus, only the fourth prong is at issue in this case.

We "ordinarily remand for resentencing if a district court commits plain error that affects a defendant's substantial rights by denying the right of allocution." *Chavez-Perez*, 844 F.3d at 543 (internal quotation marks and citation omitted). But "reversal is not automatic." *Id.* (internal quotation marks and citation omitted). Whether we choose to exercise our discretion to correct the error "is a highly fact-specific inquiry involving a range of factors." *United States v. Palacios*, 844 F.3d 527, 532 (5th Cir. 2016) (internal quotation marks and citation omitted). For example, if a defendant "had a prior opportunity to allocute, or . . . fails to explain what exactly he . . . would

have said during allocution that might mitigate the sentence, then the case is one of those limited class of cases in which we will decline to exercise our discretion to correct the error." *United States v. Avila-Cortez*, 582 F.3d 602, 606 (5th Cir. 2009) (internal quotation marks and citation omitted).

Adams's case was transferred to the Southern District of Texas after his original sentencing, so he had no prior opportunity to allocute in front of this district court. During the revocation hearing, Adams did not say a single word to the judge. Those factors alone distinguish this case from others in which we have declined to exercise our discretion to correct the error, and they suggest remand is appropriate in this case. *See id.* at 607 ("[Defendant] was never given any opportunity whatsoever to speak to the court, which is unlike any of the cases in which we have declined to exercise our discretion to correct the error."); *United States v. Figueroa-Coello*, 920 F.3d 260, 265–66 (5th Cir. 2019) (per curiam) (remanding when, at the defendant's first sentencing hearing, the judge and the defendant never interacted directly until after sentencing).

Adams has also provided us with "a sufficiently detailed and specific description of mitigating facts to be offered at allocution," which further counsels in favor of remand. *See Figueroa-Coello*, 920 F.3d at 266; *cf. United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006) (declining to remand when the defendant "d[id] not furnish any information about what he would have allocuted to that might have mitigated his sentence"). Adams's proffered allocution contains meaningful details that his attorney did not present to the court, including that Adams had "completed a group session . . . for drug treatment, and had never missed a day over the course of a year." Notably, Adams's participation in outpatient drug treatment influenced his probation officer to initially recommend that no action be taken in response to the violations alleged in the June 2023 report. Defense

counsel did not mention Adams's commitment to and successes in drug treatment at all during his argument at the revocation hearing.[3]

Adams also would have told the court about the barriers he faced in finding work, and how he persisted and recently secured a full-time job where he was paid by check.[4]  Although defense counsel submitted some evidence to that effect, including a letter with a paystub from Adams's new job, the court did not hear from Adams about his efforts to overcome the challenges he faced in obtaining legitimate employment.  "The right of allocution exists because counsel may not be able to provide the 'same quantity or quality of mitigating evidence' as the defendant at sentencing."  *Figueroa-Coello*, 920 F.3d at 268 (quoting *Avila-Cortez*, 582 F.3d at 606).  In this case, Adams deserved the opportunity to tell the court about his efforts, in his own voice, before the court determined his sentence.

In sum, Adams was denied the opportunity to say anything on his own behalf during his first appearance before this district court.  If he had been given the opportunity to allocute, he would have offered details that directly mitigated his violations but were not included in his attorney's argument.  This suggests his allocution likely would have affected the sentence he received.  *See Avila-Cortez*, 582 F.3d at 606 (reversing when defense counsel "did not give the detail, expression, or expansion" regarding the mitigating evidence that the defendant would have provided during allocution); *cf.*

---

[3] Adams's probation officer testified at the hearing that Adams had been attending outpatient drug treatment since last year, but defense counsel did not mention drug treatment at all during his argument to the court. *Cf. Avila-Cortez*, 582 F.3d at 606 (determining that reversal was appropriate even where counsel "summarily referred" to mitigating evidence that the defendant would have expounded on in his allocution).

[4] In response to a perceived misunderstanding of Adams's proffered allocution, Adams's counsel offered the additional detail about his recently secured job in the reply brief.

*Chavez-Perez*, 844 F.3d at 546 (affirming when the defendant's proffered allocution did not address the district court's area of concern at all). We thus conclude that the district court's denial of Adams's right to allocution "seriously affects the fairness, integrity or public reputation of judicial proceedings." *See Jackson*, 7 F.4th at 263. Accordingly, we VACATE Adams's sentence and REMAND for resentencing after Adams is given the opportunity to speak on his own behalf.

## B. Conditions of Supervised Release

In his second issue on appeal, Adams objects to the condition in the district court's written judgment that requires him "not [to] use or possess alcohol." The government agrees that the district court erred in including that condition in its written judgment.

Adams did not have the opportunity to object to the alcohol-related condition of supervised release, which was imposed only in the district court's written judgment after the hearing. Accordingly, we review this issue for abuse of discretion. *See United States v. Diggles*, 957 F.3d 551, 559–60 (5th Cir. 2020) (en banc) (explaining that plain-error review does not apply when a defendant did not have notice of and an opportunity to object to a condition of supervision); *see, e.g.*, *United States v. Rivas-Estrada*, 906 F.3d 346, 349 (5th Cir. 2018).

"The district court must orally pronounce a sentence to respect the defendant's right to be present for sentencing." *Diggles*, 957 F.3d at 556. This includes an oral pronouncement of discretionary conditions of supervised release—i.e., those not mandated under the supervised release statute. *Id.* at 559. "Where there is an actual conflict between the district court's oral pronouncement of sentence and the written judgment, the oral pronouncement controls." *United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006). A conflict arises when, as compared to the oral pronouncement,

the written judgment "broadens the restrictions or requirements of supervised release," *id.* at 558, or "impos[es] a more burdensome requirement," *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006).

In this case, the district court orally pronounced at the revocation hearing that Adams would be subject to "the same conditions [on supervised release] as those that were directed in the original judgment." The only alcohol-related condition of supervised release contained in the original judgment stated: "the defendant shall refrain from excessive use of alcohol." However, after the revocation hearing, the district court issued a written judgment that required Adams "not [to] use or possess alcohol." We agree with both parties that this alcohol-related condition in the court's written judgment conflicts with the court's oral pronouncement at the revocation hearing. *See United States v. Overstreet*, No. 21-30527, 2022 WL 987184, at *1 (5th Cir. Mar. 31, 2022) (per curiam) (finding a conflict between the oral pronouncement and written judgment in a case very similar to this one).

## IV.    Conclusion

In summary, we VACATE Adams's sentence including the challenged condition, and we REMAND for resentencing. On remand, the district court should provide Adams with an opportunity to allocute before imposing a new sentence and should conform its written judgment with its oral pronouncement, consistent with this opinion.

8